**SO ORDERED.**

**SIGNED this 20 day of May, 2008.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| DENISE M. MARINO | 07-02267-5-ATS |
| DEBTOR | |

### ORDER ALLOWING MOTION TO DISMISS

The matter before the court is the motion of McGill & Hampson, P.A. ("McGill law firm"), to dismiss, pursuant to 11 U.S.C. §§ 707(a) and (b), the chapter 7 case of Denise M. Marino. A hearing took place in Raleigh, North Carolina on April 30, 2008, and for the reasons stated herein the motion will be allowed and the case will be dismissed pursuant to § 707(a).

Denise M. Marino filed a petition for relief under chapter 7 of the Bankruptcy Code on October 10, 2007. The motion to dismiss the case was filed by the McGill law firm, which represented Ms. Marino in a highly contentious marital and equitable distribution proceeding from November 2003 through December 2006 in the District Court for Wake County, North Carolina. Ms. Marino received a judgment in the equitable distribution litigation that gave her, among other things, $20,896.65 of the proceeds of the sale of the martial residence, 52% of her husband's National Football League 401(k) plan and 52% of his NFL pension. Subsequently, a Qualified Domestic Relations Order was obtained with the assistance of another attorney, and the proceeds

of her husband's 401(k) plan and pension were "rolled" into two IRA accounts for Ms. Marino. The debtor has claimed these two IRA accounts with balances of $46,191 and $211,000 as exempt.

Ms. Marino's original fee arrangement with the McGill law firm provided for a $3,000 retainer and billing at the rate of from $180 to $250 per hour. Ms. Marino could not make all of the required payments and a new fee agreement was reached in August of 2005, pursuant to which Ms. Marino was to pay $100 per month and the balance of the obligation was to be satisfied in full from the proceeds she received from the equitable distribution. The total amount of fees earned by the McGill law firm was over $90,000, of which $48,631.47 was paid, including a payment of $8,000 made by the debtor's husband as ordered by the District Court and application of $20,896.65 from the sale of the martial residence awarded to Ms. Marino pursuant to the equitable distribution order.

The balance of the fees owed to the McGill law firm was $42,570.60, which the law firm agreed to reduce to $37,000, but Ms. Marino did not agree to that amount and she filed a Petition for Fee Resolution Dispute through the North Carolina State Bar. The parties attended mediation, but there was an impasse and the parties agree to resolve the issue through arbitration. Before the arbitration hearing, the McGill law firm was notified by Ms. Marino that she would be filing for bankruptcy relief. In response to that notification, the McGill firm proposed to settle their outstanding fee dispute for a payment of $20,000. The debtor did not respond to the offer and filed her bankruptcy petition.

In addition to the $42,570 unpaid attorney's fees owed to the McGill law firm, the debtor's schedules list several debts, including three credit card debts totaling $18,369.34; a debt for a personal loan of $3,660.94; a debt for accounting fees of $630; and a student loan of $784. This is a no-asset case. The debtor owns no real property and her automobile is worth less than the amount

of the debt it secures.  As previously mentioned, the debtor does have the two IRA accounts totaling $257,191 that she received as part of the equitable distribution, but she has claimed these as exempt pursuant to North Carolina General Statutes § 1C-1601(a)(9).

The debtor is employed as a senior funding coordinator by Alera Financial LLC.  Her monthly gross income is $4,242.50 and her net monthly income is $2,745.50.[1]  Her monthly expenses are $2,683.85.  She does not anticipate that her gross annual income of $50,910, given the state of the mortgage brokerage business, will improve in the near future, and in fact her incentive bonuses have been reduced.

The McGill law firm contends that this case should be dismissed pursuant to § 707(a) because the debtor's petition was not filed in good faith.  Specifically, it is alleged that Ms. Marino has the ability to pay her creditors and that her bankruptcy petition was filed primarily to frustrate the efforts of the McGill law firm to collect the legal fees that Ms. Marino had agreed would be paid from the equitable distribution she received as a result of the law firm's efforts.

Section 707(a) of the Bankruptcy Code provides that the court may dismiss a chapter 7 case "after notice and a hearing only for cause . . . ."  11 U.S.C. § 707(a).  Cause for dismissal under § 707(a) has been held to include a lack of good faith in filing the petition.  McDow v. Smith (In re Smith), 295 B.R. 69 (E.D. Va. 2003); In re Zick, 931 F.2d 1124, 1126-27 (6th Cir. 1991).  In ascertaining the debtor's lack of good faith the court should apply a totality of the facts and

---

[1] Schedule I shows income of $4,242.50 plus $800 in bonuses and commissions, but the testimony established that the $4,242.50 included the bonuses and commissions, and the inclusion of the additional $800 was an error.  The net monthly income figure is taken from Schedule I, minus the $800 error.

circumstances test. Perlin v. Hitachi Capital America Corp. (In re Perlin), 497 F.3d 364 (3rd Cir. 2007); Smith. Some of the factors include:

> 1. The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
> 2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
> 3. Debtor filed the case in response to a Judgment pending litigation . . . ;
> 4. The debtor made no efforts to repay his debts;
> 5. The unfairness of the use of Chapter 7;
> 6. The debtor has sufficient resources to pay his debts;
> 7. The debtor is paying debts to insiders;
> 8. The schedules inflate expenses to disguise financial well-being;
> 9. The debtor transferred assets;
> 10. The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
> 11. The debtor employed a deliberate and persistent plan of evading a single major creditor;
> 12. The debtor failed to make candid and full disclosure;
> 13. The debts are modest in relation to assets and income; and
> 14. There are multiple bankruptcies or other procedural "gymnastics."

In re O'Brien, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005) (quoting In re Keobapha, 279 B.R. 49, 52 (Bankr. D. Conn. 2002)).

The court may consider the debtor's ability to repay debts, but ability to repay debts alone is not sufficient to dismiss a case under § 707(a). See Perlin; Smith. Ms. Marino's income is not sufficient to pay her debts, but she has access to over $250,000 in her IRA accounts, which would be more than enough to pay her debts. However, having large sums in an exempt IRA account is not grounds for finding that a petition has not been filed in good faith. Generally, IRA accounts and ERISA accounts are protected in bankruptcy cases. In re Solomon, 67 F.3d 1128 (4th Cir. 1995) (IRA may not be considered in a chapter 13 case as part of "disposable income" under § 1325(b)(1)(B)); Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242 (1992) (ERISA qualified plan not part of chapter 7 debtor's bankruptcy estate, giving effect to ERISA's goal of protecting pension

4

benefits). However, how an IRA account is created, and the pre-bankruptcy treatment of a creditor by the debtor are relevant factors that should be part of the totality of the circumstances analysis. Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986) (pre-bankruptcy conduct may be considered when determining whether, under the totality of the circumstances, a chapter 13 plan was filed in good faith). In this case, how the IRA was created and how the debtor treated the McGill law firm are especially relevant.

The law firm finds support for its position in the case of In re Lombardo, 370 B.R. 506 (Bankr. E.D.N.Y. 2007), a case with facts very similar to those before the court. Prior to bankruptcy, the debtor in Lombardo was involved in a contentious domestic relations dispute. Ms. Lombardo could not afford to pay her legal fees, but persuaded her attorney to continue with the litigation by promising that her attorney would be paid from the debtor's share of the equitable distribution. The attorney agreed to continue with the representation and to take a security interest in the equitable distribution proceeds. Ms. Lombardo was awarded $30,400 of her husband's 401(k) plan pursuant to a QDRO, but before the attorney could perfect the security interest, Ms. Lombardo filed for relief under chapter 7 and claimed the $30,400 as exempt. The legal fees in Lombardo were $56,479.95, which exceeded the $30,400, but which the lawyer was willing, at least prior to bankruptcy, to reduce to $20,000.

The court in Lombardo found that the debtor's bankruptcy was not filed in good faith and dismissed the case pursuant to § 707(a). 370 B.R. at 514. The court's ruling was based on its findings that the debtor had not had any sudden adverse changes in her financial condition, that she had misled her attorney into performing legal services without intending to pay the attorney's fees,

5

and that, because her income was sufficient to pay her other debts, which totaled only $8,400, the debtor's petition was filed solely to frustrate the collection efforts her attorney.

The two cases, although very similar, are different in several respects. There is no evidence that Ms. Marino did not intend to pay her attorney fees when she agreed that the fees would be paid from the equitable distribution, and she did not agree to give the McGill law firm a security interest in the proceeds. Also, Ms. Marino has more consumer debts than did the debtor in Lombardo, and Ms. Marino, who makes $41,000 per year, would have difficulty satisfying her consumer debts of $23,000, most of which are high interest credit card debts, from her income. Another difference is that Ms. Marino has paid a substantial amount of the attorney fees. The debtor has reduced the McGill law firm's fees from over $90,000 to $42,570.

But, notwithstanding these differences, this court, like the court in Lombardo, finds that Ms. Marino's petition was not filed in good faith. Here there was no sudden financial disaster. The debtor may not have realized the magnitude of the attorney's fees, but she knew the fees were accruing and she knew that the law firm anticipated payment from her equitable distribution recovery. The bankruptcy was timed to preclude the arbitration and its primary purpose is to avoid her obligation to the McGill firm. This is especially unfair to the law firm because their efforts contributed to her acquisition of exempt assets of more than $250,000 that were to be the source of payment. The law firm made a more than fair offer to settle the claim for $20,000, but even that was rejected by the debtor. Understandably, the debtor does not want to withdraw funds from her IRA, because she will have to pay tax on those funds and, because she is only 51 years old, will incur a 10% penalty for early withdrawal. However, she understood that when she agreed to pay the fees from the equitable distribution recovery.

6

Based on the foregoing, the court finds that the debtor's petition was not filed in good faith and that cause exists to dismiss the case pursuant to § 707(a). The court need not consider whether the case should also be dismissed under § 707(b).

The court will delay the effective date of this order for 30 days to permit Ms. Marino and the McGill law firm to discuss the possibility of reaching an agreement with respect to payment of the law firm's fees. If a settlement is reached, the court will reconsider this order.

Accordingly, this chapter 7 case is **DISMISSED** pursuant to § 707(a), effective 30 days from the date of this order.

**SO ORDERED**.

**END OF DOCUMENT**